is docket 19-2111 it is United States v. Palillero and counsel for appellant we're ready to hear when you're ready to begin thank you your honor can you hear me just fine your honor and indeed may please the court my name is Scott Davidson I represent Francisco Palillero in this appeal we have raised four different issues on appeal but I'd like to focus the court's attention this morning in our short time on one particular issue and that is the exclusion of expert testimony regarding DNA this error I think exemplifies the unfairness of the proceedings that led to a 10-year prison sentence for mr. Palillero rising from an alleged sexual assault I'd like to focus the court's attention in this with respect to this issue on the timeline of related to the DNA evidence and it's a few items if the court bear with me I think it'll be worth before you start into that were you trial counsel below your honor I was not the trial counsel below was a gentleman by the name of Shane Jennings I don't know if your honor has encountered him in southern New Mexico but I believe he's a attorney out of El Paso and practices in Las as well so no your honor I was I was not my first question then is in regards to what the trial court was faced with the timing on the expert is that where you're going with with your argument this morning that the court erred and not allowing you with the DNA evidence yes your honor the judge judge Ken Zalas had made essentially two bases for his ruling one was untimeliness and the other was that the notice that was given by mr. Jennings that was mr. Palillero's lawyer in the trial court on December 2nd was insufficient and briefly to address my outline of the problems with those two bases for judge order is with respect to untimeliness I'll get into the timeline and show that that's not as big of an issue as the judge suggested that it was a day before trial well your honor that's not exactly I'd like to put that in context if I if I could your honor so April 28th the date of the alleged of the incident DNA evidence was taken from the alleged victim in June of 2018 according to miss Conway's testimony that was the FBI examiner who testified for the government in June of 2018 the FBI lab received items for DNA testing August 14th a Mr. Palillero August 21st mr. Jennings mr. Palillero's lawyer informed the court he had not received a DNA report from the government he's still waiting August 24th mr. Jennings asked the government for DNA and results from a DNA test that had been taken on August 14th and that was a cheat swab from mr. Palillero on September 24th so to meet September 21st according to Conway the report presumably to the government because that's not what it was released to mr. Jennings October 29th the government disclosed that DNA test result to mr. Jennings so they had it for according to miss Conway and just doing the math over a month November 1st the FBI released another DNA report again according to miss Conway's testimony at trial on November 5th mr. Jennings in a hearing in front of judge Gonzalez told the court we're guessing because we don't know what's in the DNA report to be released on November 16th on November 7th the judge had another hearing mr. Jennings told the court we don't know what's in the DNA we won't know until November 16th on November 19th five days late the government filed its notice of intent to offer an FBI DNA examiner to testify on November 30th the trial judge Gonzalez told mr. Jennings that in a hearing on a motion to continue which the judge denied that if he could find a DNA expert they could testify on December 2nd mr. Jennings filed a notice of intent to introduce the DNA expert testimony of dr. Michael Spence to in rebuttal to the FBI examiners testimony with respect to three areas one the YSTR or short and repeat typing and that identifies male DNA when you have a small amount of male a large amount of female DNA in a sample the autosomal testing and also about touch DNA and questioning Conway's conclusions on December 4th on the second day of trial mr. Jennings filed a renewed notice and attached basically 800 words of findings and those are exhibit or see the attachment I also on December 4th at 305 in the afternoon because judge Gonzales identified he says it's five minutes after three he refused to hear from dr. Spence before excluding his testimony and mr. Jennings had said to the judge mr. dr. Spence is it here in the courthouse but he could be here within an hour and a little less than an hour I think with his words and we can find out and answer the prosecutors questions as to specifically what dr. Spence is going to testify that's different from the FBI examiner and judge Gonzales said it's five after three I'm not allowing it so you know trial where was the trial at that point at what point are we in the trial your honor that was at the close of the government's evidence now mr. Jennings had offered this rebuttal expert less than two weeks after the government had disclosed its expert to any reason mr. Spence wasn't available in the court that day you honor there's no there's nothing in the record as to why he wasn't there at that moment but mr. Jennings did tell the court and that's in the record that he could be there in less than an hour it was 305 according to the judge and before 4 o'clock mr. dr. Spence rather could have been in the court to testify as to specifically what he was going to testify to and the judge didn't allow and counsel what is our standard of review on your argument your honor it's an abuse of discretion so if the ruling by judge Gonzales is arbitrary capricious then then it is an abuse of discretion under as you know well-established precedent in this court and every court across the land and it would help me a lot if you get to the argument of how this amounts to arbitrary I will your honor the it is arbitrary capricious because the government's own expert was itself their by five days and I misspoke or miswrote in the brief that was 12 days and misbehavior was discredited it was five days it was 12 days after the the judge had set the deadline but it was five days after the deadline for their disclosure the so the government's own notice was late but their witness was allowed to testify mr. Jennings if you look at this timeline mr. Jennings was repeatedly asking for the DNA evidence and he couldn't he couldn't have an expert ready before or at least he didn't get an expert before the DNA evidence was disclosed because he didn't know what the DNA evidence would say now most of the DNA evidence was exculpatory but there was none of it that was inculpatory but the government's presentation of the evidence to the jury its description of how the DNA evidence plays out is quite a bit different in tenor and tone and even in substance than what it was telling judge Gonzales it kept telling judge Gonzales there's no reason for a continuance there's no reason for mr. Jennings to investigate anything having to do with DNA because it was exculpatory but it didn't tell the jury that the DNA evidence was exculpatory never used that term they use the term exculpatory multiple times in hearings to judge Gonzales but to the jury it said that it was the DNA evidence was consistent with the alleged victim's story and that's because according to the government's presentation at the trial there was at one point the government asked miss Conway they said and the defendant could not be included in any of these items she said that's correct and they could not be excluded from every single item isn't that correct so the the the presentation that the prosecutor had to the jury was quite different and then they even speculated with no evidence at all in their rebuttal closing with no opportunity for mr. Jennings to stand up and rebut it that the unidentified male DNA on the underwear of the alleged victim of the inside of the underwear was probably her fiance they said to the jury connect the dots who's do DNA do you think was in Ashley's panties Adams DNA Adam was her fiance at the time your reason and common sense tells you that remember you don't have to leave your common sense at the door you could take the reason and common sense with you into the jury deliberation room there's a perfectly good explanation for why there's male DNA on her underpants on her panties DNA different than the defendant it's the husband the fiance at the time the husband now the husband is sitting with Ashley right now in the gallery they are not so there was DNA of another male but nobody knows whose DNA that was the ever tested it isn't the important question what dr. Spence would have testified to all of that's fine but if dr. Spence isn't going to contradict that or offer better testimony for the defendant why do it why does it matter and I guess in anticipation of your answer judge Gonzales at the 305 hearing or his question did ask what is he going to testify to this mr. Spence dr. Spence and mr. Jennings apparently fumbled and could not give an answer to that question doesn't that weigh into the abuse of discretion question yes your honor says a two-part question I'll take the second part first I think mr. Jennings were here I think he would confess that he maybe was not as as artful his as he wished it being able to explain to the trial judge what dr. Spence was prepared to testify to but the but he was going to cure that because he said the doctor could be there in less than an hour and rather than allow dr. Spence to proceed to the courtroom and allow him in and take his allow the government and the court and anybody to for dear him as to the specific basis for his testimony rather than do that judge Gonzales said oh no I'm not gonna hear from him I'm excluding your witness so I think that aspect of it I mean elevating one hour of court time over ten years of a man's life to me seems a good definition or ostensive example of an arbitrary capricious decision we could have answered the question that you have your honor as to what specifically dr. Spence was going to testify to but we do know where he was going to run that I mean again he's already said I have no idea what he's going to testify to and you're wanting us to structure construct a rule that says that that's arbitrary and capricious when the attorney doesn't need gonna put a witness on who doesn't know what they're gonna say and they're not even in the courtroom well your honor if in the context well first of all he did say immediately after saying that he said your honor part of what dr. Spence is gonna testify to is aspects of complex DNA analysis that you know I'm mr. Jennings don't fully understand that's why we're gonna have an expert and secondly there were two notices that were provided to the court one on December 2nd and a second one on December 4th and he did identify that he was going to be giving quite different conclusions in certain respects than what ms. Conway offered so there was a notice that was provided in writing to pardon that notice consistent with the requirements of rule 16 your honor the first notice I think was inadequate I think the government was correct that it that it was inadequate but given the timing of everything there was a witness was disclosed five days late on November 19 so under your own timeline the defendant was aware that DNA was going to be an issue in this case from the time he was swabbed in August of August 14th wasn't he I mean a surprise and then the government made it made it clear it was gonna call a DNA witness so um I have a hard time seeing that it was arbitrary and capricious for the the district court judge to not be amenable to an expert presented the day before trial and the defense doesn't even know what he's gonna say if the defense doesn't know how is the prosecution supposed to prepare well your honor again I can't speak for mr. Jennings exactly but the government's disclosure of DNA examiner to testify wasn't made until November 19th that was not as early as August I can't explain exactly what was going through mr. Jennings mind in August but he did tell the court a number of times we're still waiting to hear this is a November 5th and November 7th he still hadn't found out what the DNA results were going to be and the government according to miss Conway she released two reports one was of September 21st and the other was November 1st in in the first report apparently the government waited more than a month to disclose that to mr. Jennings and with the second one during November 4th that was first that wasn't disclosed till November 16th I don't know why the the government was not being held by the trial judge to his acting a standard as it held mr. Jennings particularly when mr. Jennings when ten years of mr. Polly arrows Liberty was at stake and so given the the people were asking at 305 on December 4th what is dr. Spence gonna testify to and before four o'clock they could have had an answer to that mr. dr. Spence was going to be present in the courtroom counsel you're a minute 20 over and so you need to wrap it up I'll let you finish that thought but we're trying to stay on a schedule today I apologize your honor the I think it's arbitrary capricious because of the notice issues could have been cured in less than an hour and the DNA DNA evidence as the government portrayed it to the jury was quite different than the way it was characterizing it to judge Gonzales thank you your honor thank you for your Miss Villalobos when you're ready thank you your honor may it please the court my name is Matilda McCarthy Villalobos and I'm an assistant US attorney in Las Cruces New Mexico I'd like to jump just straight into the exclusion of the DNA expert since that's where the focus has been this morning as has already been noted the standard of review is abuse of discretion so this is an exacting standard federal rule of criminal procedures 16 sets forth a framework for the disclosure of expert testimony both the government and the defendant were required to provide a summary describing any expert witnesses opinions and the basis and reasons for those opinions and the witnesses qualifications by the date set by the district court the defendant's first expert notice was and it contained none of the requisite information the notice did not contain any information as to what qualified dr. Spence as an expert in DNA and it did not so true the government's expert report was late isn't it that is correct your honor the government filed its notice five days late and we had a hearing on that matter the defendant filed a motion to exclude that witness and at the hearing the district court went through the reasons for that being late and found no bad faith on the part of the government and allowed that testimony and as your honor might remember in United States versus Bishop this court found there that one party's failure to comply with the rules does not excuse the other party's failure to comply with the rules otherwise trials would turn into a complete free-for-all so while the government's notice was late the district court found that the defendant should have been on notice as early as at least August that DNA was going to be an issue in this case and additionally the government's notice and the defendant's notice were due on the same day so his notice to file an expert disclosure was also due on November 14th and he just completely ignored that notice at trial the defendant even he filed his notice the afternoon before trial which was a Sunday and then at trial the defendant conceded that this first notice was inadequate that it contained no summary because he had only first spoken to dr. Spence at 3 or 4 p.m. on the previous day so Sunday before trial was the very first time he had ever even so much as spoken to the individual he proposed to offer as an expert witness and on the first day of trial the district court heard from both sides and after analyzing the defendants reasons the district court properly found that the defendants notice provided an insufficient basis to cross-examination it wasn't until 106 p.m. on the last day of trial after the government had already rested and 20 days after the district court's deadline that the defendant filed an amended notice that was still utterly deficient the amended notice still contained none of the experts qualifications and again contained no opinions by dr. Spence other than a results with this case investigation that I apologize the forensic DNA results from these eight evidence items provide no scientific support for the allegations associated with this case investigation it's the record that Baron I agree with you on the reports and I've looked at those reports but there were hearings at which time mr. Jennings was more complete about what mr. dr. Spence would testify correct I think at those previous hearings mr. Jennings theorized about what he wanted dr. Spence to testify to but there was never any evidence that that was actually something that miss that dr. Spence would come in and testify to there was never anything put forth that stated that dr. Spence was willing to come in to court and testify that absolutely without a doubt 100% the defendant's DNA would have been found on the victim had this occurred the way she said so I think that the district court properly found that while defense counsel theorized about what he would like dr. Spence to testify to there was just nothing explaining that that is what dr. Spence would actually testify to specifically in his report he never stated that in his report he specifically only stated that there was no scientific evidence to support the victims allegations in this case and that was it and that was something that was discussed at length at trial both the government and the defendant were able to question the government's DNA witness Jarolyn Conway and when asked whether the results of miss Conway's analysis allowed her to make a determination as to whether the defendant sexually abused the victim miss Conway answered the DNA results really don't tell us anything either way hold it right there counsel because that's part of what she said I need you to complete what she said and I want to know that mr. Jennings object to the conclusion what she said is the DNA result really don't tell us anything either way they certainly don't indicate that it's not possible that this could have occurred as it was alleged to have occurred now that gives us with one hand and take away with the other was an objection made as to that testimony at that point in time no your honor I do not believe that an objection was made to that testimony at that point in time you don't believe or there was not one made as far as my recollection from the trial I was the trial attorney on the case I do not recall that any objection was made and I don't recall I can go back and review the record but in my review of the record I do not recall any objection being made to that and miss Conway had just gotten through explaining the reasons why that supported that she had just finished we had just gone through the amount of time that had elapsed between the sexual assault and the time the DNA was taken from her which was nearly 10 hours and we had just gotten through all of the things that occurred during that amount of time such as the victim that's all well and good my point is that she said that it made no difference because you don't have it yet but then she turns around and bolsters the government's by saying it doesn't mean though that it didn't occur just as it's being said here that's a paraphrase on my part that gave me some pause but you're saying that no objection was made so that would have been a plain error review in regards to that thank you counsel yes your honor and just there was definitely not a now if there are no questions I'll continue at this point even after the defendant filed multiple deficient notices the district court gave the defendant an additional opportunity to supplement his notice on the last day of trial and when he was when defense counsel was pushed on what his expert would come into court and testify to what he stated was that his expert would testify to things beyond what he would understand and that he believed his expert would testify to something new beyond what Miss Conway had already testified to but he could not tell the court what that would be and while it's been asserted here this morning that he could have been here in an hour to explain to everyone what he would have testified to that doesn't take into account the fact that the government that would be the first time the court could not proceed directly into his testimony at that point the government would need time to then take what that information he said he would testify to would be review it and prepare for a cross-examination that's the entire purpose of these of what rule 16 sets forth to allow the government that time to prepare as for any reason there couldn't have been a continuance a I think that the reason that there couldn't be a continuance at that point is is twofold so first and I think most importantly our objection was not based on timing alone it was just but it was based purely on it was at least significantly based on this insufficient notice we needed time to review this experts qualifications find out what he was going to say consult with our expert on this and a jury the government had already rested at this point a jury was sitting there waiting and the the court found that it was not appropriate at that time to make the jury wait even longer to allow the government sufficient time to properly prepare for cross-examination again in u.s. versus pop this court stated even in the absence of prejudice integrity and scheduling considerations alone may justify suppression of otherwise admissible evidence offered by the delinquent parties the court had already addressed on numerous occasions that there was a pressing schedule that needed to be that needed to be addressed he had a pressing schedule and the court further explained in pop that courts have no obligation to grant continuances ad infinitum to avoid prejudice to parties who have demonstrated repeated failures of diligence the government and the district court repeatedly tried to accommodate the defendant first by the district court granting the first motion to continue and then setting the trial on a specific date in December to accommodate defense counsel schedule and second by agreeing to allow an extremely untimely filing of his notice of intent offer expert testimony should it provide sufficient notice to the government the week was this was this on a Friday no your honor this would have been I believe on a Wednesday trial started on Monday and I believe the government rested on Wednesday what it would've been Wednesday afternoon the defendant knew from at least August 2018 at least the DNA would be an issue in this case he acknowledged this multiple times in his pleadings but he took no meaningful steps to secure an expert until the day before trial the second reason that a continuance wasn't feasible when the defendant's expert notice was filed the afternoon prior to the commencement of trial was because the district court already had 60 jurors from around this all of southern New Mexico there at the courthouse assembled at the courthouse and the government had flown in witnesses from as far as way away as Japan for a trial date that was set months in advance specifically to accommodate defense counsel schedule similarly in United States versus Wicker the court found it was not feasible to continue the trial where a jury was already at the courthouse and trial was ready to begin in Wicker this court explained that while a continuance may normally be the most desirable remedy for failure to comply with the discovery order here in view of the district court's pressing schedule the status of the present case being in trial and the failure of a prior continuance and deadlines to ensure timely discovery the court concluded that a second continuance would not compensate for the prejudice imposed and therefore the district court did not abuse its pressing the evidence the facts here in this case bear a striking resemblance to those in Wicker and none second would this have been a second continuance it would have been there was an initial continuance in August and that was a joint motion to continue so the government was not was in agreement with that one and at that time the court gave a number of dates to the parties and in November and defense counsel could not make a date work until December so this trial had already been pushed all the way out to December specifically to accommodate defenses scheduling issues none of the Wicker factors and favor the defendant in this case and therefore the district court properly excluded his DNA witness and absolutely did not abuse its discretion in doing so further even if the district court abused its discretion in excluding the defendants DNA witness which the government does not concede this does not warrant reversal because the error was harmless given that nothing in the record establishes what the defendants expert would have actually come in and testified to particularly not anything that he would have offered that was not elicited from Miss Conway any error in excluding Dr. Spence was harmless well I'm you know the the district court suggested that that all of the evidence from Conway was exculpatory but I think Judge Baldock has already pointed out that not so much because what what the expert the defense would have presented would have said the lack of any DNA from the defendant is very surprising and is not consistent with the allegations of the victim which to me is completely different than what the government's experts that here and your honor there there's nowhere in the record that that reflects that that's what the expert would have come in and testified to that's that's not what his notice of intent ever stated and so looking at what's contained in the record based on he stated his expert would come in and testify to that that's just not that's not present there so I see my time is up so I would just like to ask the court to affirm the defendants conviction and sentence thank you thank you counsel for your arguments the case is submitted and counsel for excuse